STATE v. THOMAS ALLAN MARTIN.

212 N. W. 2d 847.

November 9, 1973—No. 43333.

*C. Paul Jones,* State Public Defender, and *Rosalie E. Wahl,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Kelly, Todd, and Olson, JJ.

PER CURIAM.

Defendant appeals from a conviction in Ramsey County District Court of felonious theft in violation of Minn. St. 609.52, subd. 2(1). On appeal it is argued that certain statements of defendant made at the scene of the arrest before a Miranda warning had been given him should not have been admitted; that references during trial to marijuana in connection with defendant were prejudicial; and that all of the elements of felonious theft were not established. We affirm the conviction.

At about 1 a. m. on May 25, 1970, the night clerk at the Angus Hotel in St. Paul summoned a passing squad car and asked the officers to investigate the fifth floor of the hotel for intruders. Only a few of the apartments on that floor of the hotel were occupied. The officers began checking the fifth floor by looking inside apartments with unlocked doors. In the course of their investigation, they discovered an apartment with its door slightly open and observed a light inside. As they entered the apartment, someone closed the door to an interior room. After receiving no response to a request that the occupants of the room come out, the officers pushed open the door. They found defendant, Thomas Martin, standing behind the door and a man later identified as Robert Dubois standing at the opposite side of the room. They observed a mattress on the floor and numerous articles of costume jewelry, leather vests, hookah pipes, and other merchandise strewn on the mattress and the floor.

The officers requested the men to explain their presence in the apartment, identify themselves, and explain where the merchandise had been obtained. In response defendant stated that

they had come to visit two girls in another apartment and when the girls were not there, they had come to the fifth floor apartment. He then identified himself. Regarding the merchandise, he said they had bought it in a parking lot from a male in a red Chevrolet by "trading some marijuana and [a] couple of shirts for it."

Upon further investigation, it was discovered that neither of the two men was a registered occupant of the apartment. Within 10 minutes after they were discovered, both men were placed under arrest and given a Miranda warning. At about this time, the articles of merchandise were examined more closely and many of them were found to have price tags. At about 9 o'clock that morning, defendant was questioned by another officer after being given a second Miranda warning. Defendant then repeated what he had told the arresting officers concerning the purchase of the merchandise. At trial, the merchandise was identified as articles stolen from a retail shop on the same night defendant and Dubois were arrested.

Defendant first alleges that the exculpatory statements concerning the purchase of the merchandise were improperly admitted because they were made prior to the giving of a Miranda warning. The trial court in a Rasmussen hearing held that the statements were admissible as being made in the course of a preliminary investigation. The court ruled that the statements made to the other officer later that morning, after defendant had received a second Miranda warning, were also admissible.

We have held in applying the principles of Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. 2d 694 (1966), that an individual need not be apprised of his constitutional rights until he is in custody and the investigation has focused on him. State v. Mitchell, 282 Minn. 113, 163 N. W. 2d 310 (1968). As stated in State v. Kinn, 288 Minn. 31, 35, 178 N. W. 2d 888, 891 (1970), in assessing when this occurs:

"* * * The police are not required to give a Miranda warning to every bystander or person in the vicinity of a happening

which it is their duty to investigate. They may properly elicit information in the ordinary course of their investigative work. While it is not suggested that police may defer the formal arrest in order to gather further admissions, an officer should not be required to give a warning statement until he *has reasonable grounds to believe both that a crime has been committed and that the defendant is the culprit.*" (Italics supplied.)

Accord, State v. Mize, 295 Minn. 519, 202 N. W. 2d 883 (1972).

In the present case, defendant was detained in one respect when the officers found him because he was not free to leave until the officers had finished their investigation. The defendant was found under unusual and suspicious circumstances. An officer faced with such circumstances should be allowed some latitude in temporarily detaining people to inquire of them as to an explanation of the situation. It is not an easy task for the police to determine the precise moment when an investigation of a general nature focuses on a suspect and becomes accusatory.

We agree with the trial court that the questions asked of defendant in the present case were asked only in the course of a preliminary police investigation before any suspicion of criminal conduct had focused on defendant. At the time of the inquiries, the officers did not have reasonable grounds to believe that defendant was a participant in a crime. Indeed, at that moment, the officers did not even have substantial reason to believe that any crime had been committed. The defendant was only requested to give his identity and explain the presence of himself and the merchandise. At this point the investigation was only of a general nature and had not focused on defendant. In any event, there would seem to be little prejudice since defendant repeated his story to a different officer later that morning after a second Miranda warning was given.

Defendant next contends that certain references to marijuana elicited by the state at trial to show the consideration given for the merchandise were prejudicial. Defendant also alleges prejudice in an attempt by the state to offer testimony on the normal

use of a water pipe—one of the articles of merchandise. On this latter allegation we need only observe that an objection to the question was sustained and the matter was thereafter dropped by the state.

In State v. Radil, 288 Minn. 279, 284, 179 N. W. 2d 602, 606 (1970), we observed that evidence is not inadmissible because it may inferentially indicate involvement in another crime when such evidence tends to establish an essential element of the crime charged. In this case, the consideration for the merchandise was evidence tending to show intent to permanently take possession of the articles. Reference to marijuana in establishing this consideration was therefore not improper. We further observe that the defense itself twice elicited testimony making references to marijuana in presenting their own case and referred to it in arguing to the jury. With this in mind, it is difficult to see how defendant can claim prejudice in this matter.

Defendant's final contention is that the evidence does not sustain the verdict with respect to two elements of the offense of felonious theft, namely, possession of the property and intent to permanently deprive the owner of possession.[1] We have held that to constitute possession it is not necessary to physically hold the items. It is sufficient if the property is under the exclusive dominion and control of a defendant, alone or in conjunction with other participants in the crime, and the defendant has the ability to take immediate possessive control. State v. Radil, *supra;* State v. Bagley, 286 Minn. 180, 175 N. W. 2d 448 (1970). Here the evidence amply shows that the merchandise was found in the room with the defendant and Dubois and was within their immediate possessive control.

We have also held that if a defendant is in possessory control

---

[1] Minn. St. 609.52, subd. 2(1), provides that whoever does the following commits the felony of theft: "Intentionally and without claim of right takes, uses, transfers, conceals or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of the property."

of stolen property, it is easy to infer an intent to permanently deprive the owner of possession. Unexplained possession of such stolen property is sufficient by itself to establish the intent. State v. Bagley, *supra*. Here, if the jury did not believe defendant's explanation of the purchase, it would be justified in finding intent from an unexplained retention of the property. On the other hand, if the explanation of purchasing the property was accepted by the jury, it would be justified in finding an intent to permanently deprive the owner of the property. We therefore conclude that the evidence in the present case supports the jury's finding of felonious theft.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.