In the Matter of the WELFARE OF
M. A., Appellant.

No. 51751.

Supreme Court of Minnesota.

Oct. 9, 1981.

William R. Kennedy, Hennepin County Public Defender and E. George Widseth, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Michael McGlennen, Thomas A. Weist, Asst. County Attys., Anne E. Peek, Law Clerk, and Toni A. Beitz, Asst. County Atty., Minneapolis, for respondent.

SIMONETT, Justice.

This is an appeal by a juvenile, who was 16 at the time of the acts in question, from a decision of the Juvenile Division of the Hennepin County District Court finding that he had committed two separate acts of unauthorized use of a motor vehicle in violation of Minn.Stat. § 609.55 (1980). On this appeal he raises issues concerning the trial court's denial of his motion to suppress

confessions he made to the police. We affirm.

Appellant has lived most of his 16 years in foster homes. In May 1980 he was placed in the Hennepin County Home School for the offense of unauthorized use of a motor vehicle. On May 24 he ran away.

In the early morning hours of May 25, 1980, an automobile was stolen from in front of the owner's home in Minnetonka. Later that same day the automobile was found by the Iowa State Patrol near Ames, Iowa, stopped by the side of Interstate 35, apparently out of gas. The troopers investigating the situation learned from appellant and his friend that they were juveniles and that they had stolen the car. Appellant was returned to Minnesota and on May 29, 1980, appeared in juvenile court, where he was ordered detained at the Woodview Detention Center until he could be returned to the County Home School.

On June 2, while still at Woodview, appellant was interviewed by two Minnetonka police officers about the stolen automobile. After having been given a *Miranda* warning, appellant gave the police officers a statement in his own handwriting admitting, in a straightforward manner, the theft.

Thereafter appellant was returned to the County Home School but ran away again. This time, in the early morning hours of June 21, 1980, a pickup truck, which had just been filled with $45 worth of gas, was stolen from the owner's residence in Bloomington. On June 25, the pickup was recovered by the Iowa Highway Patrol near Des Moines, where it had been abandoned.

Later appellant turned himself in to police in Texas and was returned again to Minnesota on June 27. After a detention hearing on June 30, appellant was sent to the Woodview Detention Center. On July 15 a Bloomington police officer interviewed him, again at Woodview, this time about the theft of the pickup. The officer advised appellant of his constitutional rights. Appellant waived his rights, told the officer, "I've been expecting you," and went on to tell how he had stolen the truck and driven it to Iowa. At the conclusion of the interview, he told the officer that he had a public defender.

On July 11, 1980, 4 days before the Bloomington police officer interviewed appellant about the theft of the pickup, the authorities had filed a delinquency petition for the earlier theft of the automobile. On July 16, the day after the interview about the pickup theft, a second delinquency petition was filed for theft of the pickup.

The adjudicatory hearing on both petitions was held on August 15, and at the same time appellant's motion to suppress his confessions was heard. It was necessary for the Iowa trooper to come from Iowa to testify. Both the car owner and the pickup owner, who had to retrieve their vehicles from Iowa, also testified. The motion to suppress was denied, appellant was found to have committed the two acts as charged, and subsequently the court committed appellant to the custody of the Commissioner of Corrections so that appellant could be placed in a more secure program.

1. Notwithstanding the other overwhelming evidence that it was he who had stolen the automobile, appellant appeals, claiming his statements to the Iowa trooper on the highway near Ames and his handwritten statement given to the Minnetonka police should have been suppressed. We see no merit to these claims. *See State v. Martin*, 297 Minn. 470, 212 N.W.2d 847 (1973); *State v. Bagley*, 286 Minn. 180, 175 N.W.2d 448 (1970).

■ Questioning during an investigatory stop generally does not require a *Miranda* warning because the questioning is not custodial in nature. *See United States v. Stout*, 599 F.2d 866 (8th Cir.), *cert. denied*, 444 U.S. 877, 100 S.Ct. 163, 62 L.Ed.2d 106 (1979). We are satisfied appellant was not significantly deprived of his freedom of action at the time the troopers questioned him on the highway near the stopped car, and we hold a *Miranda* warning was not then required. *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714

(1977); *State v. Harris*, 298 N.W.2d 356 (Minn.1980).

2. As to the confession obtained by the Minnetonka police on June 2 relating to the first theft of the automobile and the confession of July 15 obtained by the Bloomington police officer relating to the second theft of the pickup, appellant argues both should have been suppressed because they were involuntary and were obtained in violation of his right to counsel.

■ First of all, there is no merit to the contention the confessions were involuntary. Applying the totality-of-the-circumstances approach, it is clear appellant, who was not without some experience in these matters, voluntarily confessed. *See Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).

The remaining issue is whether the two confessions were obtained in violation of appellant's right to counsel. We hold appellant voluntarily, knowingly and intelligently waived that right. *Edwards v. Arizona*, —— U.S. ——, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

■ We need not here repeat what was said recently in *State v. Sufka*, 295 N.W.2d 665 (Minn.1980), except, suffice it to say, the right to counsel does not attach until formal adversary proceedings have been commenced. Until then, the police may engage in certain types of interrogation such as general on-the-scene interrogation, as well as questioning like that applied in *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), without giving a *Miranda* warning. They also may engage in other types of interrogation provided the *Miranda* warning is given and an effective waiver obtained. After the sixth amendment right attaches, whether or not the defendant has retained an attorney, the state may not deliberately elicit incriminating statements either openly or surreptitiously without first obtaining a waiver.

When does the constitutional right to counsel attach in juvenile cases? Appellant contends it should attach when the detention hearing is held, not later when the formal petition is filed. If that were so, then here appellant's right to counsel for the first theft would have attached on May 29, when the detention hearing for that offense was held, and on June 30 for the second offense, and the questioning for each offense would have occurred after the right to counsel for that offense had attached.

We do not adopt appellant's recommended approach. The decision to detain does not signal the formal start of a juvenile proceeding. The purpose of the detention hearing is simply to decide if temporary detention is necessary and sets a time limit during which formal charges, if they are to be filed, must be filed. Detention does not mean the juvenile is necessarily going to be prosecuted for the act he is suspected of committing. For example, where the juvenile has already been adjudicated a delinquent and escapes from custody and commits a new offense, the prosecutor may decide after a detention hearing there is no reason to file a petition and prosecute since the court already has jurisdiction over the juvenile.

■ It would seem the right to counsel attaches at the time the formal petition is filed. At this point, there is a definite commencement of the adversary proceedings. But whether and when such right might earlier attach, we need not discuss. We do not reach, because not raised here, the effect of legal representation before formal proceedings have commenced. Nor need we decide if the fact that the right to counsel had attached for the first offense for theft of the automobile should bar the questioning that went on with respect to the second offense, the theft of the pickup. This is so because, as *Sufka* points out, interrogation after the right to counsel has attached is not prohibited if the defendant waives his right to be interrogated in the absence of counsel. The United States Supreme Court decisions discussed in *Sufka* do not suggest that the test of waiver in the sixth amendment context should be any different than the test for waiver in the *Miranda* or fifth amendment context. *Cf.*

Y. Kamisar, *What is "Interrogation"? What Does it Matter?* 67 Geo.L.J. 1, 29–30 (1978). On both June 2 and July 15 appellant voluntarily, knowingly and intelligently waived his right to counsel and, as we have already held, voluntarily confessed his guilt.

Affirmed.