**STATE of Minnesota, Respondent,**

v.

**John C. ENGLAND, Appellant.**

No. C7–86–2146.

Court of Appeals of Minnesota.

July 21, 1987.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Darrell C. Hill, Asst. Co. Atty., St. Paul, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and PARKER and FORSBERG, JJ., with oral argument waived.

## OPINION

PARKER, Judge·

Appellant John England was convicted of simple robbery in violation of Minn.Stat. §§ 609.24 and 609.05 (1984) for being an accomplice to the robbery of a gas station/convenience store. He claims that the evidence was insufficient, that *Spreigl* evidence was improperly admitted, that jury instructions were omitted, that the court erred in allowing the State to present evidence of a prior consistent statement of the accomplice, and that his statements were admitted in violation of his *Miranda* rights. We affirm.

## FACTS

On March 4, 1986, a young black man wearing a nylon stocking over his head robbed a gas station/convenience store at the corner of Rice Street and Vadnais Boulevard at about 3:00 a.m. Approximately $180 was taken. The robber left on foot, went to a waiting car and the car drove away. The police promptly followed a car traveling east on Vadnais in the vicinity of the robbery. The car began speeding and was quickly stopped about one to one and a half miles from the robbery.

The passenger, identified as Victor Cotton, matched the description of the robber as a young black male with a maroon leather or vinyl jacket. A search of Cotton revealed a six-inch folding knife and several bills and change totaling just over $50.

John England, the driver, identified himself as William Joseph England. When he asked what was going on, England was told a robbery had just occurred. The police asked England about his passenger and he replied that the passenger was a hitchhiker. Police observed a wad of money and a stocking hat protruding from under the front passenger seat. The money amounted to $168 and the hat contained two nylon stockings. England was arrested.

The next day, investigators discovered that England had falsely identified himself as his brother. England asked to talk to Deputy Gilbert Schroepfer and explained that he gave the wrong name because his driver's license was revoked. He said he had been drinking the night before and said, "I get myself into shit all the time." England offered to provide the officer with information "bigger than robbery" because he didn't want to go back to prison.

Later that day, investigation confirmed that England had left a bar with Cotton, though he had previously denied doing so. England told the officer that while they were driving around, Cotton asked to stop for cigarettes and went into the gas station. England claimed he knew nothing about a robbery until he heard the police radio broadcast while seated in the rear of the squad car.

At trial Cotton, who had just pled guilty to simple robbery, testified that when the two of them left the bar they decided to commit a robbery because they both needed money. According to Cotton, England gave him a nylon stocking and gloves to use for the robbery.

The State presented *Spreigl* evidence that England had pled guilty to attempted simple robbery of a convenience store on February 5, 1983, and had pled guilty to aggravated robbery of a gas station which

took place on September 8, 1980. Both offenses occurred in Ramsey County, within a few miles of this robbery.

England testified and denied any knowledge of the robbery. He claimed that he initially said the passenger was a hitchhiker because he didn't want Cotton to get in trouble because of his (England's) driving without a license. England was acquitted of aggravated robbery, but convicted of simple robbery and sentenced to a presumptive term of 38 months in prison.

### ISSUES

1. Was the evidence sufficient to support the conviction?

2. Did the trial court abuse its discretion in admitting the *Spreigl* evidence?

3. Did the trial court err in failing to give an unrequested instruction on corroboration of accomplice testimony?

4. Did the trial court err in allowing the State to introduce Cotton's prior statement given at his guilty plea hearing?

5. Did the trial court err in ruling that England's statements at the scene of his arrest were admissible despite the lack of a *Miranda* warning?

### DISCUSSION

### I

England was convicted of being an accomplice to simple robbery. Under Minn. Stat. § 609.05, subd. 1 (1986), a person may be convicted as an aider and abettor if he plays at least some knowing role in the commission of the crime and takes no steps to thwart its completion. *State v. Strimling,* 265 N.W.2d 423, 429 (Minn.1978). The requisite intent may be inferred from presence, companionship and conduct before and after the offense. *State v. McBroom,* 394 N.W.2d 806, 811 (Minn.Ct. App.1986), *pet. for rev. denied,* (Jan. 16, 1987) (quoting *State v. Goodridge,* 352 N.W.2d 384, 389 (Minn.1984)).

England's criminal liability was proved by Cotton's testimony and by the evidence of England's conduct after the offense. He attempted to conceal his identity and denied knowing Cotton. He offered to trade information to avoid prison.

■ England's claim that Cotton's testimony was inadequately corroborated is without merit. While an accomplice's testimony must be corroborated, Minn. Stat. § 634.04 (1986), the accomplice's testimony need not be corroborated on every point. *State v. Houle,* 257 N.W.2d 320, 324 (Minn. 1977). The corroboration is "sufficient so long as it instills confidence in the accomplice's testimony, confirming its truth and pointing to the defendant's guilt in some substantial degree." *Id.*

Cotton's testimony was corroborated in several ways. He claimed England gave him a nylon stocking to use and the robbery victim testified the robber wore a stocking over his face. In fact, two nylon stockings were found in England's car, further suggesting that the robbery was a joint effort. England's conduct may be looked to for corroborating circumstances. *State v. Rasmussen,* 241 Minn. 310, 313, 63 N.W.2d 1, 3 (1954). As previously discussed, this lends support to Cotton's testimony. Finally, the two *Spreigl* offenses support the State's case. *See State v. Henderson,* 394 N.W.2d 561, 563 (Minn.Ct. App.1986), *pet. for rev. denied,* (Minn. Dec. 17, 1986). The *Spreigl* evidence was probative of appellant's motive, intent and knowledge. We conclude that the evidence, viewed in the light most favorable to the verdict, is sufficient to sustain the conviction.

### II

■ The trial court ruled that the *Spreigl* evidence of England's 1980 conviction for aggravated robbery and 1983 conviction for attempted simple robbery was admissible. The parties then stipulated to the presentation of these facts. The trial court gave an appropriate cautionary instruction before the stipulation was read and during final instructions. On appeal England asserts that the probative value of this evidence was clearly outweighed by its prejudicial impact. The trial court's determination was otherwise, and we are unpersuaded that the trial court's decision was

an abuse of discretion. *See State v. Ture*, 353 N.W.2d 502, 515 (Minn.1984). The evidence was probative of England's intent and absence of mistake or accident.

### III

■ England claims the trial court failed to instruct the jury that an accomplice's testimony must be corroborated. *See* 10 *Minnesota Practice*, CRIM JIG 3.18 (1985). However, no objection was made to the instructions at any time. Minn.R.Crim.P. 26.03, subd. 18(3), states that "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict." We are not persuaded that such omission was plain error affecting substantial rights or error in fundamental law. *See State v. Malaski*, 330 N.W.2d 447, 451 (Minn.1983). It should be observed that the record contains abundant evidence of corroboration.

### IV

During cross-examination of Cotton, defense counsel asked, "and didn't you say in the course of your telling this Court that you had, in fact, committed that robbery, that John England didn't know anything about the robbery?" The prosecutor objected and defense counsel stated, "Your Honor, I would like to take some time and have the court reporter pull her notes and read that back," referring to Cotton's testimony during his plea of guilty. Cotton had recently pled guilty and the transcript of the guilty plea hearing was not yet available.

After an afternoon recess, the court reporter checked her notes regarding Cotton's statements during his plea, and a portion of the plea was read to the jury. The import of the few questions read was that England did not know of the robbery until after it had been committed.

■ By the next morning, a transcript of Cotton's guilty plea had been prepared. The State requested that all of the colloquy relating to England's involvement in the robbery be read to the jury. The trial court agreed, stating in response to defense counsel's objection:

[T]he reading of that portion of the record was done at your request and for a specific purpose. There was inadequate time at that time for counsel for the State to study the record and determine whether or not, in fact, in her opinion the matter had been placed in context. She has now had that opportunity and it is her request that other material from the record at the time of Mr. Cotton's plea be read in order to put the statement in better context and the court would agree that she should have that opportunity.

The trial court's ruling was not erroneous. England "opened the door" to the evidence. England himself asked that Cotton's testimony be admitted in anticipation of attacking Cotton's credibility. He sought to show Cotton had made a prior inconsistent statement at his guilty plea. The entire prior testimony was admissible as substantive evidence under Minn.R.Evid. 801(d)(1)(B) as prior consistent testimony to rebut an express or implied charge of recent fabrication. *See State v. Sutherlin*, 396 N.W.2d 238, 243 (Minn.1986); *State v. Lucas*, 372 N.W.2d 731, 738 (Minn.1985). We find no error in allowing the jury to hear Cotton's entire prior testimony on the crucial matter of England's involvement in the robbery.

### V

■ At the scene of the stop England was asked to identify his passenger and replied, "a hitchhiker." He asserts this constituted improper questioning and tainted all of his subsequent statements because he was not given a *Miranda* warning and that his response, as well as all his subsequent statements, should have been suppressed prior to trial. We disagree.

Statements that are the product of threshold investigatory questioning do not require a warning. *See State v. Martin*, 297 Minn. 470, 472–73, 212 N.W.2d 847, 849 (Minn.1973); *see also State v. Herem*, 384 N.W.2d 880, 883 (Minn.1986). The police were attempting to determine whether England and his passenger had been in-

volved in the robbery. England's initial statement was not the product of custodial interrogation requiring a *Miranda* warning. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). England subsequently repeated his statement that the passenger was a hitchhiker when questioned five minutes later following a valid *Miranda* warning.

### DECISION

Appellant was not denied a fair trial and the evidence was sufficient to convict him of simple robbery.

Affirmed.