**UNITED STATES of America, Plaintiff,**

v.

**Thomas Pernell DAVIS, Defendant.**

**No. CRIM.02–145.**

United States District Court, S.D. Iowa.

June 27, 2003.

## ORDER ON DEFENDANT'S MOTION IN LIMINE

PRATT, District J.

Before the Court is Defendant Thomas Pernell Davis' Motion in Limine and Request for Hearing (Clerk's No. 14). Defendant seeks to exclude from admission at trial: 1) evidence of the Defendant's plea of guilty in state court to a charge of carrying a concealed weapon; 2) evidence of Defendant's prior criminal convictions to prove that Defendant is a prohibited person within the meaning 18 U.S.C. Section 922(g); and 3) evidence of Defendant's prior criminal convictions for impeachment purposes. The Government resists the motion. Also before the Court is the Government's Motion in Limine Opposing Defendant's Use of the Expert Testimony of Robert Rigg (Clerk's No.23). A hearing was held on June 27, 2003 and the matters are fully submitted.

### I. FACTS

On January 17, 2002, Defendant was riding in an automobile with two other individuals when Des Moines police officers stopped the vehicle for traffic violations. One of the passengers exited the vehicle and reached for his waistband. After police instructed the individual to put his hands up, the individual attempted to flee and a .45 caliber semi-automatic pistol fell from his clothes. Defendant and the remaining occupant of the car were ordered out of vehicle and a search of the automobile revealed a .357 revolver on the floorboard under Defendant's seat. Defendant pled guilty to a charge of carrying a concealed weapon in Iowa District Court and received a $750 fine.

Defendant's alleged possession of a firearm on January 17, 2002 forms the basis for the present charges. Specifically, Defendant is charged with being a felon in possession of a firearm and with possession of a firearm by a person who has been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. Section 922(g). Defendant intends to stipulate at trial that he is both a felon within the meaning of section 922(g), based on a federal conspiracy to distribute marijuana conviction, and that he is a prohibited person based on his prior conviction for domestic abuse assault causing bodily injury.

### II. ADMISSIBILITY OF GUILTY PLEA

As a general matter, guilty pleas are admissible in a subsequent proceeding as an admission by a party-opponent pursuant to Federal Rule of Evidence 801(d)(2). *See United States v. Williams,* 104 F.3d 213 (8th Cir.1997) ("A guilty plea is admissible in a subsequent collateral criminal trial as evidence of an admission by a party opponent.") (citing *United States v. Holmes,* 794 F.2d 345, 349 (8th Cir.1986)). Defendant challenges the admissibility of his state court plea on the basis that it is invalid for failure to comply with the constitutional requirements articulated in *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). To sustain this challenge, the burden is on the defendant to show that there is some defect that renders inadmissible this otherwise admissible evidence. *See United*

*States v. Ferguson,* 935 F.2d 862, 867 (7th Cir.1991).

■ The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). *Boykin* recognized that, prior to entering a plea of guilty, a Defendant should be aware of the important constitutional rights he is giving up in the process. *Boykin,* 395 U.S. at 243, 89 S.Ct. 1709. Foremost among these rights are the privilege against compulsory self-incrimination guaranteed by the Fifth and Fourteenth Amendments, the right to trial by jury, and the right to confront one's accusers. *Id.* These factors, along with a defendant's understanding of the nature of the charges to which he pleads guilty, are vital in determining whether a voluntary and intelligent waiver is made. *Id.; McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Nonetheless, both the Supreme Court and the Eighth Circuit have recognized that, while a Defendant must be aware of his rights, no specific articulation or listing of these rights is required, *i.e.,* a judge taking a plea of guilty is not required to follow a script or say certain phrases to ensure a valid plea. *See Brady v. United States,* 397 U.S. 742, 747–48 n. 4, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Alford,* 400 U.S. at 31, 91 S.Ct. 160; *Stacey v. Solem,* 801 F.2d 1048, 1051 (8th Cir. 1986); *Todd v. Lockhart,* 490 F.2d 626, 628 n. 1 (8th Cir.1974) ("*Boykin* does not require the express articulation and waiver of these three rights at the time the plea is entered.").

■ Defendant asserts that the record of his guilty plea indicates that the state court judge wholly failed to ensure that he understood these rights or that he understood the elements of the offense to which he was entering a guilty plea. Therefore, Defendant claims, his plea could not have been made voluntarily and intelligently and should not be admissible at trial. The Court disagrees. The record shows that Defendant was represented by counsel at the plea proceeding. Generally, a counseled guilty plea made by a competent defendant is entitled to more credibility than one made without counsel. *See generally Brady v. United States,* 397 U.S. at 748, 90 S.Ct. 1463; *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Defendant acknowledged to the presiding judge that he had read, understood, and signed a guilty plea and sentencing order which specifically delineated all of the rights enumerated in *Boykin* and numerous others. Indeed, in a space following the words, "I did the following to commit this crime," the words "I had poss[ession] of a gun" were handwritten [1] and initialed by the Defendant. Additionally, Defendant has pled guilty to three offenses on previous occasions, in both state and federal court. This indicates that Defendant was familiar with the plea process and most likely well aware of his constitutional rights, even if his representation to the judge that he understood the plea and sentencing order form was false.[2]

Defendant also argues that the plea and sentencing order form suffered from certain irregularities, *i.e.,* the form states that "all paragraphs checked below apply," but none of the boxes in front of Defendant's rights are checked. The Court finds this

---

1. It appears from evidence at hearing that Defendant's attorney wrote the statement and that Defendant read and initialed it.

2. Defendant also argues that the plea and sentencing order form suffered from certain irregularities.

argument uncompelling. At the plea hearing, the judge stated, "I have in front of me a written plea of guilty to the crime of carrying a concealed weapon. Is this your signature at the bottom?" Defendant replied that it was his signature and stated that he reads and understands English. The judge then asked, "Did you understand what you were signing when you filled out this form?" to which Defendant replied "Yes, I did." Viewing the form in its entirety and the colloquy with the presiding judge, the Court simply cannot conclude that Defendant failed to read the delineated rights and potential penalties, yet then successfully filled in the factual basis for the crime. Despite the fact that the plea colloquy was short, Defendant's responses therein, coupled with his representation by counsel,[3] his previous experience with guilty pleas, and his acknowledgment of rights on the guilty plea and sentencing order form, all support a conclusion that the plea was entered into voluntarily and intelligently.

Additionally, the Court finds that Defendant was aware of the nature of the charges mounted against him. The statute to which Defendant pleaded guilty provides, "A person ... who knowingly carries or transports in a vehicle a pistol or revolver commits an aggravated misdemeanor." Iowa Code § 724.4(1). Defendant acknowledged on the guilty plea and sentencing order form that he "poss[essed] a gun." The judge inquired, "You have written out down here you had possession of a gun. Where did you have possession of the gun?" Defendant replied, "Under the seat of a vehicle." When asked if he had a permit to carry the gun in question, Defendant replied "No, I didn't." At no point did Defendant indicate that he was merely in the vehicle with the gun or that

the gun did not belong to him. Rather, Defendant's responses indicate an admission by him that the gun was actually his and was in his possession. It was not unreasonable for the judge to find that Defendant understood the nature of the crime based on his responses in the plea colloquy and based on the guilty plea and sentencing order form.

■■■■ Defendant next argues that his guilty plea should be excluded from evidence because the probative value of the plea is substantially outweighed by the danger of unfair prejudice pursuant to Federal Rule of Evidence 403. Defendant's admission that he possessed a weapon in his state court plea proceeding is highly probative and relevant to the only disputed element of the crimes charged, *i.e.*, that Defendant knowingly possessed a firearm. Nonetheless, Defendant asserts that, once a jury hears that he entered a plea of guilty to a similar charge based on the same events, it may feel that it has "no choice but to convict him on this offense." This assertion ignores the fact that the Court presumes that jurors, "conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *Francis v. Franklin*, 471 U.S. 307, 324, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). On the present facts, the Court simply cannot accept that a jury would be unable to follow a proper limiting instruction. Therefore, upon motion, the Court will specifically instruct the jury that Defendant's plea of guilty in state court is not dispositive of the possession element in the present case and that the jury must determine independently whether Defendant actually know-

---

**3.** The Court notes that Defendant does not contend that his privately retained counsel was ineffective in any way. Additionally, Defendant has never appealed or attacked his state court guilty plea in any way prior to now.

ingly possessed a firearm in violation of Section 922(g). As such, the Court finds that the probative value of the evidence substantially outweighs any potential prejudicial effect.

## III. ADMISSIBILITY OF PRIOR BAD ACTS

■ Defendant next asserts that the nature of his prior criminal convictions need not be presented to the jury because Defendant is willing to stipulate that he is a prohibited person within the meaning of Section 922(g) as to both counts of the Indictment. The Government counters that it may, nonetheless, present testimony of the nature of the convictions to prove motive and absence of mistake or accident pursuant to Federal Rule of Evidence 404(b). Additionally, the Government desires to use Defendant's prior conviction for impeachment purposes.

■ Eighth Circuit precedent supports the proposition that "it is an abuse of discretion to admit the record of conviction when an admission is available." *United States v. Blake*, 107 F.3d 651, 652 (8th Cir.1997) (citing *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)). As the Supreme Court in *Old Chief* recognized, "the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." *Id.* At 173. This is particularly true where the "the official record offered by the government would be arresting enough to lure a juror into a sequence of bad character reasoning." *Id.* In this case, the Court is convinced that evidence of the details and nature of Defendant's prior convictions carries a grave risk that the jury will fall into a "sequence of bad character reasoning.".

The Government offers two bases on which the rule in *Old Chief* will should not apply in the present case. First, the Government contends that evidence of the De-

fendant's prior convictions will help the jury to understand Defendant's motivation in carrying a concealed weapon, *i.e.*, his history of violence and drugs may make him fear for his safety. Second, the Government contends that Defendant's prior convictions would assist in proving an absence of mistake or accident. Specifically, the Government wishes to inform the jury that one of Defendant's prior assault convictions was reasonably close in time to the present incident and, in that case, Defendant pointed an unloaded shotgun at another individual. These facts would permit the jury to conclude that Defendant had knowledge that the revolver was under his seat in the car. The Court disagrees.

With regard to the motivation justification, Defendant's prior convictions would only invite the jury to speculate about a motive not required by Section 922(g). Section 922(g) requires merely that the Defendant knowingly possess a firearm, not that he did so for one particular purpose or another. Raising Defendant's prior convictions would only invite the jury to conclude that Defendant must have possessed a weapon because violent or otherwise bad person. This is impermissible. With regard to the mistake or accident justification, the Court is equally convinced that Defendant's prior conviction merely invites the jury to conclude that because Defendant possessed a weapon once, he more likely did so on this occasion. Even assuming that the evidence would be probative in this context, the difference in the nature of the weapons diminishes any possible probative value. Regardless, in either context, even if probative value is presumed, it is substantially outweighed by potential for prejudice and inflammation of the jury. Accordingly, the Government will not be permitted to present testimony relating to Defendant's prior

convictions or the nature of those convictions.

Nonetheless, Defendant's prior bad acts may become admissible during the course of the trial. Specifically, the Court leaves the door open for their potential use on cross-examination or as impeachment matter. Should the Government become convinced during the trial that the acts have become admissible, it should raise the issue with the Court outside the presence of the jury. The Court will permit an offer of proof and make a more informed ruling at that time.

## IV. EXPERT TESTIMONY OF ROBERT RIGG

■■ Federal Rule of Evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702. In this case, Defendant, seeks to offer the testimony of Drake University Law Professor Robert Rigg. Rigg is expected to testify regarding the frenzied conditions under which pleas occur in Polk County District Court and about the normal procedures in criminal cases there. Defendant has stated that, should the Court permit testimony related to his guilty plea, Rigg's testimony would allow the jury to understand the conditions under which Defendant entered his plea and how his admission doesn't necessarily mean as much as the Government might suggest. The Government cites *United States v. French*, 12 F.3d 114 (8th Cir. 1993) in resistance. There the Eighth Circuit ruled that an attorney's proposed testimony that witnesses who testify subject to plea agreements with substantial assistance provisions are more likely to falsely incriminate defendants was not a proper subject for expert testimony. *Id.* at 116.

The Court stated that average jurors did not need an "expert witness" to explain something so clearly within the "realm of common sense." The Court finds *French* to be distinguishable from the present facts. While it is likely that an average juror could conclude that witnesses sometimes lie when offered lower sentences, it is not so likely that an average juror, with little or no exposure to the criminal court system, could adequately visualize the fervor surrounding criminal proceedings in Polk County. In this regard, the Court believes that Rigg is qualified by his experience to offer such information and that his testimony will be helpful to the jury in giving them a fair and accurate view of the harried conditions and the procedures employed in Polk County. Accordingly, the Court will permit Rigg to testify to such matters.

To the extent that the defense intends to elicit any testimony from Rigg regarding the requirements of *Boykin*, the constitutional validity of Defendant's plea, or other legal doctrines, the Court believes that these are legal issues and not factual ones. As such, they are outside the scope of permissible expert testimony. Counsel is cautioned to tread very carefully when questioning its expert because the line between permissible expert testimony and impermissible expert testimony is extremely thin on the present set of facts.

## V. CONCLUSION

Defendant's Motion in Limine is denied in part and granted in part, in accordance with the reasoning herein. The Government's Motion in Limine is denied subject to the provisions articulated *supra*.

IT IS SO ORDERED